UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:16-cr-50008 |
| v. | MEMORANDUM OPINION & ORDER |
| JASON BRADLEY, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Jason Bradley's objections to the Presentence Investigation Report ("PSR"), Dkts. 946, 955. Bradley asserts that the Federal Sentencing Guideline range reflected in the PSR was calculated using the wrong Guideline section. The PSR used § 2D1.1—relating to the unlawful manufacturing, importing, exporting, or trafficking of controlled substances—to determine Bradley's base offense level. But Bradley asserts that § 2T3.1, relating to smuggling, is actually the appropriate section to apply to his 18 U.S.C. § 545 smuggling offense. Bradley further objects to a two-level enhancement based on his importation of controlled substances and a two-level adjustment based on his leadership role in criminal activity. The Court concludes that the PSR was correct to use § 2D1.1 and that the enhancement and adjustment are appropriate.

I

On September 2, 2021, Bradley pled guilty pursuant to an Information to one count of smuggling goods into the United States in violation of 18 U.S.C. § 545 and one count of entry of goods by means of false statement in violation of 18 U.S.C. § 542. Dkt. 936. The parties

-1-

negotiated a Rule 11(c)(1)(C) range of 60 to 120 months. *Id*. According to the Government and the PSR, Bradley's Guideline range is much higher at 188 to 235 months. Dkt. 953 ("PSR") at ¶ 63; Dkt. 949 (Government's Sentencing Memorandum) at 4. Thus, the Government asks for the maximum sentence allowed by the Rule 11(c)(1)(C) agreement. Dkt. 949 at 6.

## II

Bradley is correct that U.S.S.G. § 2T3.1 determines the base offense level for a violation of 18 U.S.C. § 545. *See* U.S.S.G. § 2T3.1 Commentary; U.S.S.G. Appendix A. But § 2T3.1(c) refers us to § 2D1.1 for smuggling violations, like this one, involving controlled substances. Section 2T3.1(c) instructs that "[i]f the offense involves a contraband item covered by another offense guideline, apply that offense guideline if the resulting offense level is greater than that determined above." The Introductory Commentary preceding § 2T3.1 provides insight into the purpose behind this cross-reference and allays any doubt as to its application to Bradley's offense.

> [This Subpart] is intended to deal with some types of contraband, such as certain uncertified diamonds, *but it is not intended to deal with the importation of other types of contraband, such as drugs*, or other items such as obscene material, firearms or pelts of endangered species, the importation of which is prohibited or restricted for non-economic reasons. Other, more specific criminal statutes apply to most of these offenses. *Importation of contraband or stolen goods not specifically covered by this Subpart would be a reason for referring to another, more specific guideline, if applicable*, or for departing upward if there is not another more specific guideline.

U.S.S.G. § 2T3, Introductory Commentary (emphasis added). Because Bradley pled guilty to smuggling α-Pyrrolidinovalerophenone, Dkt. 929 (Information); Dkt. 936 (Plea Agreement), and α-Pyrrolidinovalerophenone is banned by the Drug Enforcement Administration, PSR at p. 23, §

2T3.1 unmistakably requires the Court to look for the Guideline section covering the importation of drugs.

That is § 2D1.1. A cross-reference to § 2D3.2, which Bradley urges in his reply memorandum, Dkt. 955 at 7, would be inappropriate for two reasons. First, § 2D3.2 relates to situations in which those authorized to distribute controlled substances fail to comply with the statutory limitations on their authority.* The relatively low base offense level prescribed by § 2D3.2, (a base offense level of 4), reflects the fact that such regulatory infractions are significantly less serious than, for example, the smuggling of drugs across interstate borders by persons lacking any authority whatsoever to handle controlled substances. Second, the resulting offense level under that Guideline would not be greater than the offense level that would result under § 2T3.1. The clear import of the Introductory Note and cross-reference to § 2T3.1 is that greater penalties than those otherwise reflected in § 2T3.1 should apply to violations of 18 U.S.C. § 545 involving controlled substances like α-Pyrrolidinovalerophenone.

Bradley argues in the alternative that the drug weight to be inputted into the Drug Quantity Table in § 2D1.1(c) should be limited to what was smuggled in January or February of 2015, the period covered by his count of conviction. This argument lacks merit. Application

---

* The statutory provisions covered by this section are 21 U.S.C. §§ 842(a)(2), (9), (10), (b), 954, and 961. U.S.S.G. § 2D3.2, Commentary. § 842(a)(2) makes it unlawful for any person "who is a registrant to distribute or dispense a controlled substance not authorized by his registration to another registrant or other authorized person or to manufacture a controlled substance not authorized by his registration." § 842(a)(9) makes it unlawful for any person "who is a regulated person to engage in a regulated transaction without obtaining the [proper] identification[.]" § 842(a)(10) makes it unlawful for any person "negligently to fail to keep a record or make a report" or "negligently fail to self-certify" as required by law. § 842(b) makes it unlawful "for any person who is a registrant to manufacture" certain controlled substances when "not expressly authorized by his registration" or "in excess of a quota assigned to him[.]" § 954 governs the conditions on which certain controlled substances may be legally imported into the United States. § 961 lays out the penalties for violations of § 954.

Note 5 of § 2D1.1(c) instructs that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." This note cites § 1B1.3(a)(2) of the Sentencing Guidelines, which states that where § 3D1.2(d) would require grouping of multiple counts, the base offense level where the guideline specifies more than one base offense level is determined by reference to conduct that was "part of the same course of conduct or common scheme or plan as the offense of conviction[.]" Section 2D1.1 specifies multiple base offense levels based on drug weight via the Drug Weight Table in § 2D1.1(c). Moreover, following the trail to § 3D1.2(d), we see that offenses covered by § 2D1.1 should be grouped. And we have already determined that Bradley's offense is covered by § 2D1.1.

### III

Bradley also objects to the PSR's use of a two-level enhancement under § 2D1.1(16)(C), *see* PSR at ¶ 31, which applies where a defendant receives an adjustment under § 3B1.1 and "was directly involved in the importation of a controlled substance." Bradley asserts that neither requirement is satisfied. First, Bradley argues that he should not be subject to an adjustment under § 3B1.1 because he was not "an organizer, leader, manager, or supervisor" in criminal activity within the meaning of § 3B1.1(c). Other co-conspirators, he urges, had a greater leadership role, and did not receive the enhancement. Second, he argues that an enhancement for importation of a controlled substance would "apply to every § 545 conviction and thus require double-counting for the same offense conduct." Dkt. 955 at 8.

The Court disagrees. Paragraph 24 of the PSR lays out the offense conduct that establishes Bradley's role as an organizer of the drug conspiracy. According to the PSR, Bradley "directed co-conspirators to falsify electronic transfers of money to avoid suspicion", "encouraged the use of 'burner phones'", "engaged in research about the legality of certain

chemicals and sent emails to his co-conspirators about his findings" and "helped organize trips to China for co-conspirators to obtain synthetic drugs to send back to the United States." These facts are undisputed, and the Court finds that they establish that Bradley "controlled others" and thus was an organizer of the criminal activity within the meaning of § 3B1.1(c). *United States v. Vilaisane*, 267 Fed. App'x. 286, 288 (4th Cir. 2008) ("For a role adjustment to be given because a defendant was a leader, the defendant must have controlled others."). Whether co-conspirators received this enhancement is irrelevant to the analysis. *See id*. at 289 (finding § 3B1.1 applicable where defendant held a leadership role as to some co-conspirators but not others).

Finally, one can violate 18 U.S.C. § 545 without smuggling drugs, so it is untrue that an enhancement for importation of a controlled substance would apply to every § 545 conviction. Regardless, "there is a presumption that double counting is proper where not expressly prohibited by the guidelines." *United States v. Hampton*, 628 F.3d 654, 664 (4th Cir. 2010).

The Clerk of the Court is directed to send a copy of this order to Defendant, counsel for Defendant, and counsel for the Government.

Entered this \_\_5th\_\_ day of January, 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE